**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TIFFANY M. WASHINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.  1:17-cv-00528-TFM-MU** |
| | ) | |
| **PATRICK M. SHANAHAN,** *et al.*,[1] | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 19, filed August 6, 2018).  Following Plaintiff's response to the motion to dismiss (Doc. 27, filed September 14, 2018), Defendants filed a reply and, with it, a request to convert their motion to dismiss to a motion for summary judgment ("motion to convert") (Doc. 30, filed September 28, 2018).  No response was filed to the motion to convert.  Thus, both motions are ripe for review.

After a careful review of the pleadings, motions, responses, and replies, the Court **DENIES** Defendants' motion to dismiss and **DENIES** Defendants' motion to convert for the reasons articulated below.

## I.   PARTIES AND JURISDICTION

Plaintiff Tiffany M. Washington ("Plaintiff" or "Washington") brought suit in this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), asserting claims under Title VII of

---

[1] On January 1, 2019, Patrick M. Shanahan was named Acting U.S. Secretary of Defense, succeeding Defendant James T. Mattis.  Accordingly, Shanahan shall be automatically substituted as a defendant in this case pursuant to Fed. R. Civ. P. 25(d).

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and section 501 of the Rehabilitation Act, 29 U.S.C. § 791 *et seq*., against the Defense Contract Management Agency ("DCMA"), Washington's former employer, and the Secretary of Defense, as the named representative for the DCMA (collectively, "Defendants").

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In her Amended Complaint (Doc. 12), Washington, an African American female, alleges that her former employer, the DCMA, discriminated against her on the basis of race and sex; that the DCMA retaliated against her for filing an Equal Employment Opportunity ("EEO") discrimination complaint; and that the DCMA refused her request for accommodation for a disability.  A former procurement analyst for the DCMA, Washington alleges that she worked for the DCMA from sometime in June 2008 until May 18, 2015, when her employment was terminated.  Washington alleges that she filed an informal EEO complaint of discrimination in September 2014 after she was demoted for poor performance despite receiving high ratings on her performance evaluations up to and including 2014.  She also alleges that her former teleworking privileges were revoked at this time.

Washington asserts that she was targeted for harassment and retaliation by a second-level supervisor after filing her EEO complaint.  Specifically, she asserts that the supervisor, a white female, denied Washington's request for a "maxi-flex" work schedule while approving its use among white male employees; required Washington to use personal time or available leave to meet with union representatives when working on her EEO complaint, contrary to agency rules; required Washington to seek permission for any activity requiring oversight from her instead of Washington's direct supervisor; required Washington to seek approval from management before speaking to union or EEO representatives and to retain responsibility for work assignments while

on approved leave to meet with EEO personnel; and initiated an investigation into Washington's claim for relocation expenses after she was involuntarily transferred from Mobile, Alabama, to Atlanta, Georgia. Washington alleges that Defendants terminated her on the basis that she submitted inaccurate reimbursement documents in relation to her transfer, but she was not reimbursed for any expenses or provided an opportunity to correct any errors. Washington also alleges that, during the timeframe outlined, she was diagnosed with a severe depressive disorder that adversely affected her ability to perform her work duties, and that she informed her supervisor of her diagnosis, but Defendants offered no work accommodation. Washington filed a formal EEO complaint in December 2014, which she amended in May 2015. She received a final decision on March 20, 2018.

From the instant suit Washington seeks declaratory judgment; reinstatement to her former position or an equivalent position; $300,000 in compensatory damages; back pay, with interest; reimbursement of her prior relocation expenses; and reimbursement of various costs and expenses.

### III.    CURRENT MOTION

Defendants have moved to dismiss the Amended Complaint on the basis of judicial estoppel, arguing that Washington filed successive bankruptcy petitions—on February 20, 2015; June 12, 2015; and July 26, 2017—in which she failed to disclose pending employment actions related to the claims at issue in this case, and that her failure to disclose them was a deliberate attempt to abuse the judicial system.[2]  (Doc. 19).

Specifically, Defendants allege that Washington's initial, informal EEO complaint was pending at the time she filed her February 2015 bankruptcy petition, but the employment action

---

[2] Defendants also note that Washington filed three earlier bankruptcy petitions in February 2004, October 2004, and July 2013.  However, those additional petitions precede the initiation of the employment actions at issue here.

was not disclosed in the bankruptcy petition. They additionally allege that at the time of Washington's June 2015 bankruptcy filing: (1) her informal EEO complaint remained pending; (2) Washington also had initiated an appeal of her termination to the Merit Systems Protection Board ("MSPB"); and (3) she had begun an appeal of the denial of her claim for moving reimbursement expenses to the Civilian Board of Contract Appeals ("CBCA"). Defendants assert that none of those actions were disclosed on Washington's bankruptcy petition.

They further contend that, at the time of Washington's July 2017 bankruptcy filing, her CBCA appeal and EEO complaint remained pending, and neither was disclosed. Specifically, as to the EEO claim, Defendants indicate that Washington's informal complaint had resulted in a formal complaint in December 2015, which was denied by the DCMA's EEO Board in March 2016, and an appeal of that decision to the EEO Commission's Office of Federal Operations remained pending at the time of Washington's final bankruptcy petition. Defendants also assert that Washington had filed a federal lawsuit in the Northern District of Georgia in September 2016 challenging the result of her appeal to the MSPB and failed to disclose the lawsuit in her 2017 bankruptcy petition.[3]

Defendants argue that Washington's nondisclosure of these pending proceedings makes a mockery of the judicial system, and thus, warrants dismissal of her instant complaint on the ground of judicial estoppel. Defendants assert that Washington is a sophisticated litigant, and that her nondisclosure was a deliberate effort to hide potential assets from her creditors. As evidence of Washington's sophistication, Defendants offer that: (1) Washington has filed at least three

---

[3] As noted *infra*, Washington asserts that she amended her 2017 bankruptcy petition to disclose her federal lawsuits on December 7, 2017—eight days after filing this suit. *See infra* p. 6. Defendants concede this point in their reply. (Doc. 30 at 4-5).

employment-related administrative claims and two related federal lawsuits and was represented by counsel and/or union representatives at various stages of those proceedings; (2) she has filed six separate bankruptcy proceedings and was represented by counsel in all of them; and (3) Washington formerly owned and operated a downtown Mobile event space, a business for which she obtained a Small Business Administration ("SBA") loan and filed a British Petroleum ("BP") claim after the Deepwater Horizon oil spill. They aver that her employment history as a procurement specialist for DCMA demonstrates a "certain level" of legal sophistication. They further assert that Washington disclosed in her bankruptcy petitions both lawsuits filed against her by creditors and her BP oil spill claim, demonstrating that she was aware of the requirement to disclose pending claims.

In her response, Washington challenges Defendants' motion on procedural and substantive grounds. She responds, first, that Defendants' judicial estoppel argument is not properly raised in a motion to dismiss. Rather, she argues, it is an affirmative defense that should be pleaded in an answer to a complaint or, more appropriately, in a motion for summary judgment. Washington notes that Defendants, in their motion, look past the four corners of the complaint and reference documents from other cases in other courts. She requests that, if this Court elects to convert the motion to dismiss to a motion for summary judgment, she be provided additional time to conduct discovery.

Additionally, Washington asserts that, even assuming judicial estoppel is properly raised in a motion to dismiss, Defendants cannot meet the applicable test set out in *Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2007). Washington argues that she did not seek money damages in her informal EEO complaint or in the appeal of her MSPB decision, and thus, there was no need to list them as assets. She also alleges, as to the MSPB appeal, that she would not have received

attorney fees if her appeal had been successful because she was represented by a layman union representative, nor would she have been entitled to back pay because her new job pays as much or more than the job from which she was terminated. As to her appeal to the CBCA for reimbursement of relocation expenses, Washington argues that the money she sought was merely reimbursement for funds already paid out, she has no debts related to the claim, and she did not list her reimbursement claim on the advice of her bankruptcy attorney.

Washington argues that her formal EEO complaint was the first employment-related claim that could have resulted in damages or financial gain, and thus, her 2017 bankruptcy petition was the first during which she had a relevant pending action. Washington asserts—and Defendants concede in their reply—that she amended her 2017 bankruptcy petition accordingly on December 7, 2017—eight days after filing the instant lawsuit—to reflect the pendency of the instant action, and her separate lawsuit brought in the Northern District of Georgia. Washington asserts that her bankruptcy attorney stated in a bankruptcy court pleading that the omission of Washington's federal lawsuits was inadvertent.

Washington also argues that none of the three bankruptcy plans at issue were approved, and thus, there was no judicial acceptance of her plans and no prejudice to creditors. In a footnote, she differentiates her Chapter 13 bankruptcy filings with the Chapter 7 filings at issue in *Slater*, arguing that, because she filed for Chapter 13 bankruptcy protection, she retained standing to pursue this action.

Washington argues Defendants fail to show that any nondisclosure was intentional rather than inadvertent, as required by *Slater*. She asserts that ancillary activities such as owning a business and filing a BP oil claim do not prove she intended to deceive the bankruptcy court, and that it is too early in the proceedings to make such a determination based on mere inference.

In their reply, Defendants argue that, contrary to Washington's assertion, the plain language of the relevant bankruptcy Schedule B in 2015 required that petitioners list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case," which does not limit suits and proceedings to those in which the petitioner seeks money damages. They further assert that, by the time Washington filed her 2017 petition, the Schedule B language had been updated to specify that petitioners must list "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment" and included as examples "accidents, employment disputes, insurance claims or rights to sue." Defendants argue that, despite this clarification, Washington did not disclose in her 2017 petition her still-pending EEO appeal, her outstanding appeal to the CBCA, or her Georgia lawsuit.

Defendants argue that, contrary to Washington's assertion, she was required to list her CBCA appeal in her bankruptcy filings because the claim was a potential asset.[4] Although Defendants concede that Washington amended her 2017 bankruptcy petition to disclose her pending federal lawsuits, they contend that her disclosure was deceptive because she valued both lawsuits at $1 despite requesting substantial money damages and claimed that the lawsuits were exempt from her bankruptcy proceedings. Defendants contend that the relevant question is not whether Washington's creditors were actually damaged by her nondisclosure, but whether her statements were calculated to make a mockery of the justice system.

Finally, Defendants request that the Court convert their motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56. They argue that the motion may be converted, and

---

[4] They also assert that Washington's "claim that she never sought money damages is flatly refuted" by her Georgia lawsuit and this lawsuit, both of which seek money damages. However, Washington does not assert that she "never" sought money damages, but merely that she did not seek them in the actions filed prior to the Georgia suit.

granted, without the need for discovery. Specifically, Defendants argue that the facts supporting judicial estoppel are established by Washington's bankruptcy petitions, federal lawsuits, and agency complaints and decisions. Thus, in their assessment, there is no need for additional discovery regarding her administrative and litigative actions.

## IV.    STANDARD OF REVIEW

In evaluating a motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citing *St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)). In other words, in deciding a motion to dismiss, the court will accept the petitioner's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984); *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (stating that conclusory allegations and unwarranted deductions of fact are not admitted as true).

## V.    DISCUSSION

A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C. §§ 521(a)(1), 541(a)(7). The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a

debtor must amend her financial statements if circumstances change. *See id.* §§ 521(a)(1), 541(a)(7); *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010). Full and honest disclosure in a bankruptcy case is "crucial to the effective functioning of the federal bankruptcy system." *Hosea v. State Farm Fire & Cas. Co.*, Civ. Act. No. 14-0414-CG-B, 2015 WL 13678039, at \*4 (S.D. Ala. May 21, 2015) (citation and internal quotations omitted). "It is undisputed that a pending lawsuit seeking monetary compensation qualifies as an asset." *Robinson*, 595 F.3d at 1274 (citation omitted).

Judicial estoppel is an equitable doctrine invoked at the Court's discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001). It is intended to protect the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50 (citation and internal quotations omitted). The "doctrine of judicial estoppel rests on the principle that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Slater*, 871 F.3d at 1180-81 (citation and internal quotations omitted). "When a party does so, the doctrine of judicial estoppel allows a court to exercise its discretion to dismiss the party's claims." *Id.* at 1180.

> The rationale for ... decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for [her] own benefit in a separate proceeding.

*In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (emphasis omitted) (citation omitted).

The Eleventh Circuit "employs a two-part test to guide district courts in applying judicial estoppel: whether (1) the party took an inconsistent position under oath in a separate proceeding,

and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Slater*, 871 F.3d at 1181 (citation and internal quotations omitted). Under the test, the Court considers both the plaintiff's actions and her motive. *Id*. Merely taking inconsistent positions does not warrant judicial estoppel where they were the result of inadvertence or mistake. *Id*. Judicial estoppel "'looks towards cold manipulation and not an unthinking or confused blunder.'" *Id*. (quoting *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973)).

To determine whether a plaintiff's inconsistent statements were intended to make a mockery of the judicial system, courts should look at the totality of facts and circumstances in a particular case. *Id*. at 1185. In the case of a bankruptcy proceeding, the court may consider factors such as (1) the plaintiff's level of sophistication; (2) whether and under what circumstances she corrected the disclosures; (3) whether the trustee or creditors were aware of the civil lawsuit or claims before Plaintiff amended her disclosures; (4) whether Plaintiff told her bankruptcy attorney about her civil claims before filing the bankruptcy disclosures; (5) whether Plaintiff identified other lawsuits to which she was a party; and (6) any action taken by the bankruptcy court concerning the nondisclosure. *Id*. The Court may not infer intent to abuse the judicial system based merely on whether the plaintiff knew of her civil claim when completing her disclosure forms. *Id*. at 1177, 1185. The list is not exhaustive; the court is "free to consider any fact or factor it deems relevant to the intent inquiry." *Id*. at 1185 n.9.

In considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court's analysis is generally limited to the four corners of the complaint and the attached exhibits. *See Maxcess, Inc. v. Lucent Technologies, Inc.,* 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity"). A motion to dismiss under Rule

12(b)(6) or 12(c) must be converted to a motion for summary judgment where matters outside the pleadings are presented to and not excluded by the court. FED. R. CIV. P. 12(D). In that case, all parties must be provided reasonable opportunity to present "all the material that is pertinent to the motion." *Id*. However, the Court may decline to convert a motion to dismiss where the Court does not consider evidence outside the pleadings when ruling on the motion. *See Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) (finding that the district court did not abuse its discretion in rescinding an order converting a motion to dismiss to a motion for summary judgment where the Court made clear when it did so that discovery was stayed and it did not consider any evidence outside the pleadings when ruling on the motion to dismiss).

Estoppel is an affirmative defense and, as such, typically should be raised in an answer pursuant to Fed. R. Civ. P. 8(c), not in a motion to dismiss. *See* FED. R. CIV. P. 8(C)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including … estoppel"); *see also Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("Generally, the existence of an affirmative defense will not support a motion to dismiss"); *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982) (noting that an assertion of res judicata was an affirmative defense properly raised under Rule 8(c)); *Austin v. Progressive RSC, Inc.*, Civ. Act. No. 8:07-CV-01412-T-24-EAJ, 2008 WL 11445445 at *1-2 (M.D. Fla. Mar. 19, 2008) (noting that res judicata and collateral estoppel are not defenses under Rule 12(b) but affirmative defenses that should be raised under Rule 8(c)). Nevertheless, a complaint may be dismissed under Rule 12(b) where an affirmative defense is clearly apparent on the face of the complaint. *Quiller*, 727 F.2d at 1069; *Concordia*, 693 F.2d at 1075; *see also Regions Bank v. The 62' Ocean Sport Fish, Hull I.D. No. XY0011462J203*, Civil Act. No. 13-20966, 2014 WL 37748, at *2 (S.D. Fla. Jan. 6, 2014) (stating, in the context of equitable estoppel, that a defendant typically

"'does not have an opportunity to prove affirmative defenses in a motion to dismiss, as affirmative defenses do not constitute the elements of a plaintiff's claim'"); *Austin*, 2008 WL 11445445 at *2 ("'Generally, the existence of an affirmative defense will not support a motion to dismiss. Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.'").

As an initial matter, Washington correctly asserts that judicial estoppel is an affirmative defense and, as such, is properly raised under Fed. R. Civ. P. 8(c) or in a motion for summary judgment. As Defendants note in their motion, the two-pronged test for demonstrating that judicial estoppel is warranted in this Circuit is whether (1) the Plaintiff took an inconsistent position from one taken in her bankruptcy proceedings, and (2) the inconsistent position was calculated to make a mockery of the judicial system. *Slater*, 871 F.3d at 1181. The facts necessary to establish these elements are plainly not present on the face of Washington's complaint. *See, e.g.*, *Quiller*, 727 F.2d at 1069. Thus, Defendants' motion does not fall within this exception and is due to be dismissed on this basis.

The Court notes that, even evaluating the merits of Defendants' argument under a motion to dismiss, Defendants have not demonstrated that judicial estoppel would be warranted in this case.[5] Looking to the first prong of the *Slater* test, the parties agree that Washington disclosed the instant lawsuit in her pending bankruptcy filing days after the suit was initiated. Defendants argue that the first prong is nevertheless met because (1) Washington's disclosure of this lawsuit was

---

[5] Defendants have filed with their motion, and the Plaintiff has filed with her response, various documents in support of their allegations. However, because this was filed as a motion to dismiss, the Court has not considered those extraneous documents. *See* FED. R. CIV. P. 12(D); *Harper*, 592 F.3d at 1232. Further, the Court declines to convert the motion to dismiss to a motion for summary judgment at this time for reasons discussed *infra*. *See infra* pp. 14-15.

insufficient; (2) she failed to disclose other, separate proceedings—namely, her MSPB appeal, resulting in a separate federal lawsuit in Georgia; and her CBCA appeal regarding her relocation expenses; and (3) Washington failed to disclose the EEO complaint underlying this lawsuit. As to the first, Defendants provide no legal support for how or why Washington's disclosure was insufficient. As to the second, the relevant case law does not appear to support the assumption that Washington's failure to disclose *any* legal or administrative proceedings in her bankruptcy petitions warrants application of judicial estoppel in this case, even where the facts and circumstances of those proceedings overlap with the instant case. The *Slater* decision reaffirmed that judicial estoppel may be applied when a plaintiff takes a position under oath in a bankruptcy proceeding that is inconsistent with one taken in the lawsuit at issue in the case, noting that "equity frowns upon a plaintiff's pursuit of a claim that [she] intentionally concealed in bankruptcy proceedings." *Slater*, 871 F.3d at 1180. It said nothing of a plaintiff's pursuit of one claim when she purportedly concealed a *different* claim in bankruptcy proceedings. *See generally Slater*, 871 F.3d 1174.

As to the third, Washington concedes that she did not disclose her EEO complaints, but she contests Defendants' assertion that disclosure was required. It is not necessary to resolve this dispute, however, because even if Defendants' motion could meet the first prong, it does not meet the second.

Defendants ask the Court to infer intent based, in part, on an assertion that Washington is a sophisticated litigant. To the extent Washington's work history or administrative or legal proceedings may show she is an experienced litigant, it is notable that four of Washington's six bankruptcy proceedings were dismissed—including all three of the proceedings at issue here— and none of her job-related claims has yet proven successful. Defendants also assert that

Washington disclosed in her bankruptcy filings lawsuits that had been filed against her by creditors, and her own prior BP oil spill claim, which indicates she was aware of the requirement to disclose pending claims. However, these actions bear little similarity to the EEO proceedings at issue here. Moreover, Washington disclosed the lawsuit that resulted from her EEO charge eight days after she filed the lawsuit—and long before Defendants filed their motion to dismiss. *See De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1290-91 (11th Cir. 2003) (noting that a plaintiff had a pending charge before the EEOC when he filed for bankruptcy in November 2000 and "never amended his bankruptcy filing to add his lawsuit as a potential asset" once he filed a discrimination lawsuit in May 2001).

Defendants also point to Washington's failure to disclose her other ongoing actions, but there still is insufficient detail to demonstrate that her failure to disclose evidences a deliberate attempt to make a mockery of the courts. Based on the language of the 2015 bankruptcy schedule quoted by Defendants, it would be difficult to assume that a lay filer's failure to disclose the administrative proceedings indicated by Defendants was intentional, particularly those in which the filer did not seek monetary compensation. Indeed, Defendants' assertion that the language subsequently was clarified would seem to support the idea that the details of this requirement were previously unclear. Moreover, Washington asserted that she did not disclose her CBCA appeal on advice of counsel. Based on the totality of the circumstances, Defendants have not demonstrated that Washington's omission was an intentional attempt to make a mockery of the courts.

In their reply, Defendants request that the Court convert the motion to dismiss to a motion for summary judgment, asserting that there is "no need for Plaintiff to conduct discovery regarding her administrative and litigative allegations" and that the "facts supporting judicial estoppel are established by Plaintiff's own bankruptcy petitions when combined with her federal lawsuits and

various agency complaints and decisions." The Court disagrees. Although the Federal Rules permit a motion for summary judgment at this stage, such a motion would be premature in this case, given the fact-based nature of the *Slater* inquiry. No scheduling order has been determined, nor any discovery taken. Accordingly, the Court declines to do so.

Defendants' motion to dismiss is **DENIED**. Defendants' motion to convert the motion to dismiss to a motion for summary judgment is **DENIED**.

**DONE and ORDERED** this 24th day of January, 2019.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE